# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## HUNTINGTON DIVISION

| | |
|---|---|
| **SARAH MAE MARIE BRUMFIELD,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **CIVIL ACTION NO. 3:14-10719** |
| ) | |
| **CAROLYN W. COLVIN,** ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

This is an action seeking review of the decision of the Commissioner of Social Security denying Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. This case is presently pending before the Court on the Parties' cross-Motions for Judgment on the Pleadings. (Document Nos. 12 and 13.) Both parties have consented in writing to a decision by the United States Magistrate Judge. (Document Nos. 5 and 6.)

The Plaintiff, Sarah Mae Marie Brumfield (hereinafter referred to as "Claimant"), filed applications for DIB and SSI on March 7, 2011, and March 3, 2011 (protective filing date) respectively, alleging disability as of February 24, 2011, due to Chronic Obstructive Pulmonary Disease ("COPD") and carpal tunnel syndrome ("CTS").[1] (Tr. at 10, 140-41, 142-49, 165, 184.) The claims were denied initially and upon reconsideration. (Tr. at 64-67, 68-70, 73-75.) On September 28, 2011, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 96-97.) The hearing was held on September 11, 2012, before the Honorable Michele M. Kelley. (Tr. at 18-63.) By

---

[1] On her form Disability Report - Appeal, undated, Claimant reported heart problems as an additional disabling condition. (Tr. at 193.)

decision dated October 19, 2012, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 10-17.) The ALJ's decision became the final decision of the Commissioner on December 17, 2013, when the Appeals Council denied Claimant's request for review. (Tr. at 1-5.) On February 19, 2014, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 2.)

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2012). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the

claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2012). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she had not engaged in substantial gainful activity since February 24, 2011, the alleged onset date. (Tr. at 12, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from COPD, which was a severe impairment. (Tr. at 12, Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 14, Finding No. 4.) The ALJ then found that Claimant had a residual functional capacity to perform medium exertional level work, as follows:

> [T]he [C]laimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except she can only occasionally climb ladders and scaffolds; frequently balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; and occasionally tolerate concentrated exposure to extreme cold, vibrations, fumes, odors, dusts, and gases. Further, she can understand, remember, and carry out simple, routine tasks involving no more than short simple instructions; make no more than simple work-related decisions; tolerate only few work place changes; and tolerate only occasional interaction with the public, coworkers, and supervisors.

(Tr. at 14, Finding No. 5.) At step four, the ALJ found that Claimant was unable to perform her past relevant work. (Tr. at 16, Finding No. 6.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ concluded that Claimant could perform jobs such as a dishwasher, stock clerk, and sorter, at the unskilled, medium level of exertion. (Tr. at 16-17, Finding No. 10.) On this basis, benefits were denied. (Tr. at 17, Finding No. 11.)

3

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is not supported by substantial evidence.

Claimant's Background

Claimant was born on January 3, 1967, and was 45 years old at the time of the administrative hearing, September 11, 2012. (Tr. at 16, 23, 140, 142.) Claimant had a sixth grade, or limited education and was able to communicate in English. (Tr. at 16, 26, 183-85.). Claimant had past relevant work as a caterer and food preparation worker, childcare worker, janitorial worker, and screen maker. (Tr. at 16, 27-32, 51, 53-54, 156-64, 167-74, 184-85.)

Claimant's Challenges to the Commissioner's Decision

Claimant alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ failed to consider all of her impairments when assessing her RFC. (Document No.

12 at 4-7.) Claimant states that she suffers from COPD, shortness of breath requiring night-time oxygen and inhalers, CTS, dizziness, back pain, possible coronary arteriosclerosis with chest pain, depression, crying spells, anger outbursts, and memory problems. (Id. at 5.) She asserts that the ALJ considered her COPD, but failed to consider the aforementioned symptoms and conditions, in addition to anxiety and panic attacks. (Id. at 5-6.) Claimant also contends that the ALJ erred in relying on the opinions of the non-treating and non-examining State agency medical consultants "who blindly surmised that [Claimant] can perform medium level work." (Id. at 5.) Similarly, she asserts that the ALJ failed to pose hypothetical questions to the VE that contained all of her symptoms and impairments. (Id. at 6.) Finally, she asserts that the ALJ failed to provide a reasonable explanation as to why she determined that Claimant was not entitled to full credibility. (Id.)

In response, the Commissioner asserts that the ALJ appropriately evaluated the medical opinion evidence of record. (Document No. 13 at 5-7.) The Commissioner asserts that pursuant to the Regulations, State agency physicians are highly qualified experts in social security disability evaluation, and that the ALJ was entitled to rely upon their assessments. (Id. at 6.) As the ALJ explained, the Commissioner asserts that the State agency physicians' opinions were consistent with other medical evidence of record. (Id.) No treating physician assessed any functional limits or opined that Claimant was unable to work due to her COPD. (Id.) CT scans showed only mild emphysema, her bronchoscopy was normal, and although she had intermittent wheezing, findings were benign. (Id. at 7.) The Commissioner asserts that credibility determinations regarding Claimant's symptoms are within the ALJ's province exclusively, not a physician's. (Id.) The Commissioner further asserts that the evidence of record undermined Claimant's credibility. (Id. at 8.) As stated, Claimant's emphysema was mild and the CT scan revealed no worrisome findings. (Id.) Despite recommendations that she stop smoking, the Commissioner notes that she continued to smoke a pack of cigarettes a day. (Id.) The

5

ALJ accommodated limitations resulting from her lung conditions when she limited her exposure to dust, fumes, and irritants. (Id.)

The Commissioner further asserts that Claimant's activities undermined her credibility. (Id. at 8-10.) Claimant maintained her personal care, shopped, and completed household chores. (Id. at 8-9.) Furthermore, she worked part-time as a caterer after her alleged onset date. (Id. at 9.) Accordingly, the Commissioner contends that the record, as a whole, failed to support a disabling condition and that the ALJ properly assessed the opinion evidence, Claimant's credibility, and her RFC. (Id. at 9-10.)

The Medical Record

The Court has reviewed all the evidence of record, including the medical evidence, and will discuss it below in relation to Claimant's arguments.

Claimant presented to the emergency room at St. Mary's Medical Center on January 20, 2011, with complaints of flu-like symptoms, including a cough, generalized body aches, fever, chills, and nasal congestion, all with a ten-day history. (Tr. at 253, 489.) Claimant reported chest wall discomfort when coughing and an intermittent productive cough. (Id.) She denied a history of anxiety, depression, or suicidal ideations. (Tr. at 255, 491.) Physical exam revealed regular and non-labored respirations, and an absence of rales or rhonchi, but a very faint expiratory wheeze in the right upper and lower lobes. (Tr. at 256, 492.) Physical exam in all other respects essentially was normal. (Tr. at 256-57, 492-93.) Claimant was admitted. (Tr. at 254, 490.) Chest x-rays on January 20, 2011, revealed a small ill-defined opacity in the bilateral upper lobes and a questionable area of opacity in the medial right middle lobe. (Tr. at 270, 515-16.) Findings suggested pneumonia and a CT scan was recommended. (Id.) An initial CT scan on January 20, 2011, revealed emphysema and patchy bilateral infiltrates involving both lungs, which caused the interpreting physician to suspect septic emboli bilaterally. (Tr. at 271, 504, 514.) On January 22, 2011, it was determined that the bilateral focal patchy infiltrates

most likely were secondary to pneumonia, which could have been atypical versus typical and not as likely to have been septic emboli. (Tr. at 229.) Claimant was treated with antibiotics and discharged on January 24, 2011, in good condition. (Tr. at 223-25, 444-46.) Chest x-rays prior to discharge on January 24, 2011, indicated no significant change and a stable chest. (Tr. at 269.)

On February 21, 2011, Claimant was seen by Dr. Essam Mekhaiel, M.D., of University Physicians and Surgeons, for management of shortness of breath. (Tr. at 424-27.) Claimant complained of shortness of breath, chills, upper back pain, and wheezing. (Tr. at 424.) Upon examination, Dr. Mekhaiel failed to observe any wheezing, rhonchi, rales, or crackles and noted that her chest was not overinflated. (Tr. at 425-26.) He assessed shortness of breath, cough, and infiltrates in both lungs. (Tr. at 426.) Dr. Mekhaiel recommended a bronchoscopy and chest CT Scan and prescribed a Proventil inhaler. (Id.)

Claimant followed-up with Dr. Fadi Alkhankan, M.D., also of University Physicians and Surgeons, on February 24, 2011. (Tr. at 275-79, 419-23.) She reported continued chest pain or discomfort, chest congestion, chronic dyspnea on exertion, and chronic cough with sputum. (Tr. at 275, 419.) Physical examination revealed that her chest was overinflated, but there was no evidence of bronchial breath sounds, wheezing, rhonchi, rales, or crackles. (Tr. at 276, 420.) Dr. Alkhankan assessed shortness of breath, cough, bilateral lung infiltrates, and COPD. (Tr. at 279, 423.) He continued Claimant on her Proventil inhaler and prescribed Spiriva HandiHaler and ordered a chest CT scan, pulmonary function test, and an overnight pulse oximetry. (Id.)

On March 18, 2011, Claimant saw Heidi Wehrheim, M.D., regarding her elevated hemoglobin and blood sugar levels. (Tr. at 280-83.) Active problems included backache, chest pain, COPD, cough, CT lung infiltrates bilaterally, dizziness, headache, nephrolithiasis, and shortness of breath. (Tr. at 280.) Claimant reported that she exercised regularly and was not sedentary, though Dr. Wehrheim

observed that she was in poor physical condition. (Tr. at 281.) Claimant also reported that she was working part-time. (Id.) Dr. Wehrheim had Claimant ambulate down the hallway and then up and down a flight of stairs. (Tr. at 282.) She observed increased dyspnea during the hallway, which became significant on the stairs. (Id.) Claimant denied chest pain during the exercises, but was very short of breath. (Id.) Dr. Wehrheim assessed shortness of breath, palpitations, coronary arteriosclerosis, chest pain, COPD, backache, and iron deficiency anemia. (Tr. at 282-83.) She discussed with Claimant breathing exercises, advised that she quit smoking, continued her medications, and ordered a work-up with a pulmonologist. (Tr. at 283.)

A chest CT Scan on February 26, 2011, revealed interval resolution of previously noted bilateral infiltrates, mild emphysema, and "no worrisome findings." (Tr. at 284-85, 412-13.) On that same date, Dr. Alkhankan conducted spirometry and lung volume testing, which demonstrated dyspnea on exertion. (Tr. at 286, 303, 410.) Testing was consistent with a moderate pseudoobstructive airway defect. (Id.) Claimant had moderate air trapping but no hyperinflation. (Id.) Pulmonary function studies revealed the same results. (Tr. at 288-91.)

Dr. Narendra Parikshak, M.D., a State agency physician, completed a form Physical RFC Assessment on May 25, 2011. (Tr. at 292-99.) Dr. Parikshak opined that Claimant's COPD limited her to performing medium exertional level work, with frequent postural limitations except that she could climb ladders, ropes, and scaffolds only occasionally. (Tr. at 292-94.) Dr. Parikshak also opined that Claimant should avoid concentrated exposure to extreme cold, vibration, fumes, odors, dusts, gases, and poor ventilation. (Tr. at 296.) Dr. Fulvio Franyutti, M.D., another State agency physician, reviewed the medical evidence in the case file and affirmed Dr. Parikshak's assessment, as written, on August 11, 2011. (Tr. at 311.)

On May 26, 2011, Claimant returned to Dr. Alkhankan for management of abnormal

radiological findings, bronchitis, COPD, and shortness of breath. (Tr. at 305-09, 405-09.) Claimant denied new onset of dyspnea, chest congestion, or shortness of breath. (Tr. at 305, 405.) Dr. Alkhankan noted that she had chronic dyspnea, though it was not present at rest or on exertion. (Id.) She denied chest pain or discomfort and palpitations. (Id.) Dr. Alkhankan noted that Claimant continued to smoke. (Tr. at 306, 406.) On physical examination, Claimant's chest was overinflated and she had some wheezing. (Tr. at 308, 408.) Her lungs were clear to auscultation and had no bronchial sounds, inspiratory wheezing, rhonchi, or rales and crackles. (Id..) Dr. Alkhankan assessed shortness of breath, cough, history of infiltrates in both lungs, and COPD. (Tr. at 309, 409.) He noted that Claimant's COPD was under "good control" and continued Claimant on her inhalers and directed her to return for follow-up in five months. (Id.)

Claimant underwent a consultative mental status examination by Emily E. Wilson, M.A., a licensed psychologist, at the request of the SSA on September 6, 2011. (Tr. at 312-17.) Ms. Wilson noted that Claimant was working part-time as a caterer. (Tr. at 312-13.) Claimant reported anxiety that began several years ago, characterized by worry and difficulty falling asleep sometimes. (Tr. at 313.) She also reported depression with the symptoms of increased appetite, frequent nightmares, poor energy, feelings of worthlessness, and increased irritability and worrying. (Id.) Depression began when she took Chantix to stop smoking, between May and July, 2011. (Id.) Claimant also reported that she was tired a lot, depressed sometimes, and not interested in much. (Id.) She further reported an increased appetite, problems concentrating, an inability to have fun, shortness of breath, memory problems, smelling strange odors, backache, nightmares, fast heartbeat, many fears, headaches, nervousness, temper problems, many arguments, and relationship changes. (Id.)

Ms. Wilson noted Claimant's activities to have included performing self-care tasks independently, light cleaning, occasionally cooking, shopping, managing finances, and doing laundry.

(Tr. at 314.) On mental status examination, Ms. Wilson noted that Claimant was cooperative and interacted in an appropriate manner, and she maintained fair eye contact. (Tr. at 314-15.) Claimant exhibited relevant and coherent speech and her verbal responses were adequate and appropriate, was oriented fully, had an appropriate mood but restricted affect, denied any delusions or obsessions, had normal memory and above average concentration, denied suicidal or homicidal ideation, exhibited normal psychomotor activity, and had normal persistence and pace. (Tr. at 315.) Ms. Wilson noted that Claimant's insight and judgment were below average. (Id.) She diagnosed anxiety disorder NOS and opined that Claimant's prognosis was good if she obtained consistent and appropriate psychotropic and psychological intervention. (Tr. at 316.)

On September 23, 2011, Karl G. Hursey completed a form Psychiatric Review Technique, on which he opined that Claimant's anxiety disorder was a non-severe impairment, that resulted in mild restriction of activities of daily living and social functioning and no difficulties in maintaining concentration, persistence, or pace, or episodes of decompensation of extended duration. (Tr. at 318-31.) He further opined that Claimant retained "the capacity to engage in worklike activity consistent with SGA." (Tr. at 330.)

Claimant returned to Dr. Alkhankan on October 24, 2011, for management of COPD and shortness of breath. (Tr. at 398-404.) She reported chest congestion, chronic productive cough, wheezing, and new onset of chronic dyspnea at rest, during exertion, and with changes in position, and which was worse at night. (Tr. at 398.) He noted that Claimant continued to smoke and that her chest was overinflated, and pulmonary auscultation revealed abnormalities and wheezing. (Tr. at 401.) Dr. Alkhankan assessed shortness of breath, cough, coronary arteriosclerosis, COPD, and backache. (Tr. at 404.) He continued Claimant on Proventil and Spiriva and prescribed Prednisone and Amoxicillin. (Id.)

On January 26, 2012, Claimant reported chest congestion and dyspnea during exertion. (Tr. at 389.) Claimant's chest was clear to auscultation and wheezing was not heard. (Tr. at 392.) Dr. Alkhankan assessed shortness of breath and cough, hemoptysis, current smoker, acute sinusitis, allergic rhinitis, chest pain, and COPD. (Tr. at 393.) He encouraged smoking cessation but Claimant was not interested in stopping at that time. (Id.) Claimant underwent a bronchoscopy on January 31, 2012, which revealed normal results. (Tr. at 375-76.) Another chest CT Scan on February 6, 2012, revealed no evidence of parenchyma lung disease. (Tr. at 363-64.) It was noted that the left mainstream and particularly the left lower lobe bronchus, appeared abnormal. (Tr. at 364.) Based on these test results, Dr. Alkhankan prescribed a course of Zithromax for Claimant and indicated that the results revealed pneumonia. (Tr. at 362.)

On February 13, 2012, Claimant reported chest congestion, dyspnea during exertion, chronic productive cough, and wheezing. (Tr. at 356-61.) On physical exam, Dr. Alkhankan noted that Claimant's lungs were clear to auscultation, though rhonchi were heard. (Tr. at 360.) His assessment was the same except for the addition of pneumonia and nephrolithiasis. (Id.) Claimant returned to Dr. Alkhankan on June 13, 2012, for management of COPD and shortness of breath. (Tr. at 342-49.) She reported chest congestion, dyspnea on exertion and worse at night, chronic productive cough, and wheezing. (Tr. at 342.) On physical exam, Dr. Alkhankan observed rhonchi, but noted that her lungs were clear to auscultation and he did not hear any wheezing. (Tr. at 346.) He assessed headache, shortness of breath, cough, dizziness, current smoker, multiple pulmonary nodules, allergic rhinitis, palpitations, pneumonia, COPD, and nephrolithiasis. (Tr. at 347-48.) He again encouraged smoking cessation and renewed her medications and oxygen. (Tr. at 348.)

Analysis.

1. State Agency Physicians' Opinions.

Claimant alleges that the ALJ erred in giving great weight to the opinions of the State agency physicians who opined that she was capable of performing medium exertional level work. (Document No. 12 at 5.) Pursuant to 20 C.F.R. §§ 404.1527(e)(2) and 416.927(e)(2), an ALJ is required to consider the opinions of State agency medical or psychological consultants, except for the ultimate determination of disability, which decision is reserved to the ALJ. The Regulations consider State agency consultants as highly qualified experts in their field, and therefore, the ALJ may rely upon their opinions. Id. Title 20, C.F.R. §§ 404.1527(e)(2)(I) and 416.927(e)(2)(I) provide:

> Administrative law judges are not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychiatrists. State agency medical and psychological consultants . . . are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider findings and other opinions of State agency medical consultants . . . except for the ultimate determination about whether you are disabled.

20 C.F.R. §§ 404.1527(e)(2)(I) and 416.927(e)(2)(I) (2012). Similarly, SSR 96-6p provides:

> Because State agency medical and psychological consultants and other program physicians and psychologists are experts in Social Security disability programs, the rules in 20 CFR 404.1527[e] and 416/927[e] require administrative law judges and the Appeals Council to consider the findings of fact about the nature and severity of an individual's impairment(s) as opinions of nonexamining physicians and psychologists. Administrative law judges and the Appeals Council are not bound by findings made by State agency or other program physicians and psychologists, but they may not ignore these opinions and must explain the weight given to the opinions in their decisions.

The Ruling further states:

> In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources. For example, the opinion of a State agency medical or psychological consultant or other program physician or psychologist may be entitled to greater weight than a treating source's medical opinion if the State agency medical or psychological consultant's opinion is based on a review

12

>of a complete case record that includes a medical report from a specialist in the individual's particular impairment which provides more detailed and comprehensive information than what was available to the individual's treating source.

SSR 96-6p, 1996 WL 374180 *2 (July 2, 1996).

In her decision, the ALJ gave the opinions of Dr. Parikshak and Dr. Franyutti, both State agency medical consultants, great weight because their opinions were consistent with Claimant's improving medical signs and mild laboratory findings and because they were familiar with Social Security rules and regulations. (Tr. at 16.) Claimant contends that because these medical consultants neither talked to nor examined her, they failed to consider all of her limitations to which she testified. (Document No. 12 at 5.) Pursuant to 20 C.F.R. §§ 404.1527(e)(2) and 416.927(e)(2) and SSR 96-6p, the ALJ was entitled to rely on the opinions of Drs. Parikshak and Franyutti as State agency medical consultants because they were highly qualified experts in evaluating disability. The ALJ also was entitled to rely upon their opinions because they were consistent with the evidence of record. See 20 C.F.R. §§ 404.1527(e)(2)(ii) and 416.927(e)(2)(ii) (2012). The ALJ noted that Dr. Alkhankan's examinations revealed only intermittent observations of a hyperinflated chest, wheezing, rales, and rhonchi. (Tr. at 16.) She noted that Claimant reported in March 2011, that she exercised regularly and continued to work part-time. (Tr. at 16.) A chest CT Scan revealed only mild emphysema and no worrisome findings, spirometry revealed only moderate obstruction, and a bronchoscopy in January 2012, was normal. (Tr. at 16, 284-86, 303, 410, 412-13.) Additionally, Dr. Alkhankan noted in May 2011, that Claimant's COPD was under "good control." (Tr. at 309, 409.) Furthermore, as the Commissioner points out, Claimant's treating physician did not assess any functional limitations resulting from her medical conditions or opine that she was unable to work. Accordingly, the Court finds that the opinions of Dr. Parikshak and Dr. Franyutti are consistent with the substantial evidence of record as determined by the ALJ, and therefore, the ALJ's decision to give their opinions great

13

weight is supported by substantial evidence.

2. Claimant's Credibility.

Claimant also alleges that the ALJ erred in assessing her credibility by failing to give a reasonable explanation as to why she found Claimant not credible entirely. (Document No. 12 at 6.) A two-step process is used to determine whether a claimant is disabled by pain or other symptoms. First, objective medical evidence must show the existence of a medical impairment that reasonably could be expected to produce the pain or symptoms alleged. 20 C.F.R. §§ 404.1529(b) and 416.929(b) (2012); SSR 96-7p; See also, Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). A claimant's "statements alone are not enough to establish that there is a physical or mental impairment." 20 C.F.R. §§ 404.1529(a) and 416.929(a) (2012) If such an impairment is established, then the intensity and persistence of the pain or symptoms and the extent to which they affect a claimant's ability to work must be evaluated. Craig v. Chater, 76 F.3d at 595. When a claimant proves the existence of a medical condition that could cause the alleged pain or symptoms, "the claimant's subjective complaints [of pain] must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be proved by objective medical evidence." Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994). Objective medical evidence of pain should be gathered and considered, but the absence of such evidence is not determinative. Hyatt v. Sullivan, 899 F.2d 329, 337 (4th Cir. 1990). In Hines v. Barnhart, 453 F.3d 559, 565 n.3 (4th Cir. 2006) (*citing* Craig v. Chater, 76 F.3d at 595), the Fourth Circuit stated:

> Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers.

A claimant's symptoms, including pain, are considered to diminish his capacity to work to the

extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4) (2012). Additionally, the Regulations provide that:

> [w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons. . . . Factors relevant to your symptoms, such as pain, which we will consider include:
>
> (i) Your daily activities;
>
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms.
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
>
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
>
> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and
>
> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) (2012).

SSR 96-7p repeats the two-step regulatory provisions:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms. * * * If there is no medically determinable physical or mental impairment(s), or if there is a medically determinable physical or mental impairment(s) but the impairment(s) could not reasonably be expected to produce the individual's pain or other symptoms, the symptoms cannot be found to affect the individual's ability to do basic work activities.

15

> Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7p, 1996 WL 374186 (July 2, 1996). SSR 96-7p specifically requires consideration of the "type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms" in assessing the credibility of an individual's statements. Significantly, SSR 96-7p requires the adjudicator to engage in the credibility assessment as early as step two in the sequential analysis; i.e., the ALJ must consider the impact of the symptoms on a claimant's ability to function along with the objective medical and other evidence in determining whether the claimant's impairment is "severe" within the meaning of the Regulations. A "severe" impairment is one which significantly limits the physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c) and 416.920(c).

Craig and SSR 96-7p provide that although an ALJ may look for objective medical evidence of an underlying impairment capable of causing the type of pain alleged, the ALJ is not to reject a claimant's allegations solely because there is no objective medical evidence of the pain itself. Craig, 76 F.3d at 585, 594; SSR 96-7p ("the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record"). For example, the allegations of a person who has a condition capable of causing pain may not be rejected simply because there is no evidence of "reduced joint motion, muscle spasms, deteriorating tissues [or] redness" to corroborate the extent of the pain. Id. at 595. Nevertheless, Craig does not prevent an ALJ from considering the lack of objective evidence of the pain or the lack of other corroborating evidence

16

as factors in his decision. The only analysis which Craig prohibits is one in which the ALJ rejects allegations of pain solely because the pain itself is not supported by objective medical evidence.

The ALJ noted the requirements of the applicable law and Regulations with regard to assessing pain, symptoms, and credibility. (Tr. at 14-15.) The ALJ found at the first step of the analysis that Claimant's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Tr. at 15.) Thus, the ALJ made an adequate threshold finding and proceeded to consider the intensity and persistence of Claimant's alleged symptoms and the extent to which they affected Claimant's ability to work. (Tr. at 15-16.) At the second step of the analysis, the ALJ concluded that "the [C]laimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. at 15.)

As indicated above, the ALJ's credibility decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 WL 374186 *2 (July 2, 1996). The Court has determined that although the ALJ's ultimate credibility determination is supported by the evidence in the case record, her decision failed to set forth specific reasons for her credibility finding. Thus, while the record supports the ALJ's ultimate credibility determination, it is not for the Court to surmise the ALJ's reasoning or to substitute its opinion for that of the ALJ's opinion when her decision is bereft of sufficient reasons to support her credibility finding.

In assessing Claimant's pain and credibility, the ALJ summarized Claimant's activities when she addressed her mental impairments. (Tr. at 13.) The ALJ, however, failed to acknowledge or summarize Claimant's testimony from the administrative hearing and failed to address many of the

17

factors set forth in 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4). In fact, the ALJ's analysis consists of four one or two sentence paragraphs summarizing the evidence and a paragraph devoted to the opinion evidence. Her analysis, at most consists of one page in length. (Tr. at 15-16.) The ALJ noted the nature of Claimant's physical impairments, including pneumonia, COPD, and mild emphysema and that she was treated with oral antibiotics for pneumonia. (Tr. at 15.) The only other treatment discussed was her treating physician's repeated recommendation that she quit smoking, which she failed to do. (Id.) The ALJ failed to mention that she was treated with other medications, including the use of two inhalers and nightly oxygen. The ALJ also failed to acknowledge Claimant's testimony that she was unable to afford certain medications prescribed by Dr. Alkhankan. (Tr. at 40.) The ALJ failed to discuss any precipitating or aggravating factors and pain relievers. Claimant testified that she was unable to walk or stand longer than 10 to 15 minutes or one block, that she was unable to sit for more than a short while due to back pain, that she had difficulty lifting due to pain in her back and hands, could not breathe if she went up or down stairs, and had sleep difficulties. (Tr. at 41-43.) The Court therefore finds that although the ALJ's credibility analysis is ultimately supported by the substantial evidence of record, it is not for the Court to make such a finding without having the benefit of the ALJ's explanation as to her assessment pursuant to the Regulations and SSR 96-7p. For this reason, the Court finds that remand is necessary for the ALJ to explain her credibility assessment and resulting RFC assessment.

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is not supported by substantial evidence. Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Judgment on the Pleadings (Document No. 12.) is **GRANTED**, Defendant's Motion for Judgment on the Pleadings (Document No. 13.) is **DENIED**, the final decision of the Commissioner is **REVERSED**, and this matter is **REMANDED** to the

Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further administrative proceedings, and is **DISMISSED** from the active docket of this Court.

The Clerk of this Court is directed to send a copy of this Memorandum Opinion to counsel of record.

ENTER: March 31, 2015.

R. Clarke VanDervort
United States Magistrate Judge